# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WENDY HANAWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-565-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Wendy Hanaway brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. Upon review of the administrative record (Doc. No. 10, hereinafter "R. \_"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB and SSI applications on June 16, 2014. Her disability-onset date was ultimately alleged to be December 17, 2013. R. 23, 79, 194-206. Following denial of her applications initially and on reconsideration, a hearing was held

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

before an Administrative Law Judge ("ALJ") on November 13, 2015. R. 84-85, 107-108, 42-81. The ALJ issued an unfavorable decision on March 28, 2016. R. 20-41.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 17, 2013, the alleged disability-onset date. R. 25. At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine, osteoarthritis, status post residuals of gunshot wound to the left leg, and sensorineural hearing loss in the left ear with tinnitus. R. 25-27. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 27.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all her medically determinable impairments. R. 27-36. The ALJ found:

> [Plaintiff] has the [RFC] to perform sedentary work . . . except occasionally climb ramps and stairs, but avoid the climbing of ladders, ropes and scaffolds; frequently balance, occasionally stoop, kneel, crouch and crawl; occasionally use the bilateral upper extremities for reaching overhead; avoid no more than occasional exposure to extreme cold, vibration and workplace hazards, such as unprotected heights and hazardous machinery. This individual will occasionally require the use of a cane to ambulate to and from the workstation. This individual will require a sit/stand option that allows the person to change positions from sitting to standing every 30 minutes, remaining at the workstation and still remain productive.

R. 27.

At step four, the ALJ considered the hearing testimony of a vocational expert ("VE") and found that Plaintiff was able to perform her past relevant work as an Administrative Assistant, Receptionist, and Claims-Services Representative. R. 36-37.

The ALJ therefore determined that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R 37; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), .1560(b)(3); *id.* §§ 416.920(a)(4)(iv), (f), .960(b)(3). Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-4; *see* 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner

3

followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff challenges the ALJ's RFC determination. Specifically, Plaintiff criticizes the ALJ's failure to expressly adopt a limitation on movement of the neck and spine that had been recommended by Plaintiff's treating neurosurgeon, Michael Hahn, MD. *See* Pl.'s Br. (Doc. No. 14) at 2-9, 11-13.

I. *The Relevant Record and Written Decision*

Plaintiff visited Dr. Hahn a total of three times, primarily for issues regarding her cervical spine. On September 23, 2013, Plaintiff presented with a complaint of neck pain with arm and hand weakness following a disc-fusion surgery in 2000, a workplace neck injury in 2011, and another disc-fusion surgery in 2012. R. 499-502. The ALJ accurately summarized Dr. Hahn's impressions from this visit: "[Plaintiff] did have good strength in all major muscle groups of the upper extremities, hand grips and hand intrinsics. The flexion and extension x-ray showed no obvious motion." R. 30; *see* R. 500-01. Dr. Hahn referred Plaintiff for a cervical-spine MRI (R. 513-14), which "showed only mild adjacent level disease" and "no significant neurologic compression." R. 495. At Plaintiff's visit of January 16, 2014, Dr. Hahn ordered a CT scan and opined that Plaintiff could "perform light duty work with no lifting greater than twenty-five pounds and no significant pushing, pulling, climbing, crawling or stooping." R. 495.

4

As summarized by the ALJ, at Plaintiff's visit of March 13, 2014, Dr. Hahn reported that Plaintiff "had improved lately and the CT scan showed a very solid fusion within the disc spaces at the two levels of her cervical spine." R. 36; *see* R. 489-92. As further noted by the ALJ, Dr. Hahn "recommended no additional surgical intervention and released her at maximum medical improvement from a neurosurgical standpoint. He recommended a 25-pound permanent weight lifting restriction with minimal motion of the neck and spine." R. 36; *see also* R. 31, 491.

In the written decision, the ALJ twice discussed Dr. Hahn's opinions, including the "minimal motion of the neck and spine" recommendation. R. 31, 36. The ALJ stated that she "affords greater weight to the opinion" of this "treating physician," which "is well supported by medically acceptable clinical and laboratory findings, and is consistent with the record when viewed in its entirety." R. 36.

## II. *Whether the ALJ's RFC Determination Is Legally Flawed*

Plaintiff argues, in essence, that the ALJ erred by giving "great[] weight" to Dr. Hahn's opinion but failing to expressly incorporate Dr. Hahn's "minimal motion of the neck and spine" limitation into the RFC determination. According to Plaintiff, this omission constituted improper "cherry-picking" and is not adequately explained by the written decision. Pl.'s Br. at 2-9, 11-13. Defendant agrees that the ALJ failed to adopt the "more restrictive portions of Dr. Hahn's opinion" but argues that this omission was proper. Def.'s Br. (Doc. No. 15) at 2-11.

When an ALJ considers a treating-physician's opinion, the ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). Here, there is no such specificity: despite finding Dr. Hahn's opinion to be well supported and consistent with the record, R. 36, the ALJ apparently rejected the portion of the opinion regarding movement of the neck and spine. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence" and only if he or she "give[s] specific, legitimate reasons for doing so." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal quotation marks omitted); *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[T]he ALJ . . . must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). The ALJ in the written decision provides no specific reason for rejecting the limitation on movement of the neck and spine.

Defendant argues that the ALJ's rejection of this aspect of Dr. Hahn's opinion was "reasonabl[e]" and that she "gave good reasons for . . . doing so." Def.'s Br. at 6, 7. Specifically, Defendant argues that there was other evidence cited by the ALJ elsewhere in the decision that supports the ALJ's RFC determination and that "Dr. Hahn's opinion was inconsistent with his findings of normal upper extremity functioning including strength/hand grips." *Id.* at 6, 7-8. But the ALJ's assignment of great weight was without reservation, and the ALJ did not in any way indicate that he was rejecting the movement

6

limitation due to the inconsistency noted by Defendant. A reviewing court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

In sum, the ALJ's written decision fails to show that he followed the correct legal standards in forming the RFC determination. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).[2]

### III. Whether the ALJ's Error Was Harmless

Defendant implies that any error by the ALJ was harmless because the descriptions for the occupations relied on by the ALJ at step four, as set forth in the *Dictionary of Occupational Titles* ("DOT"), do not require "particular positioning of the head or neck." Therefore, according to Defendant, there was no conflict between the three occupations' requirements and the DOT, and "[t]he ALJ's RFC assessment did *not* preclude" Plaintiff's performance of any of these occupations. Def.'s Br. at 15. Plaintiff, however, argues that the ALJ's failure to include the "minimal motion of neck and spine" limitation in the relevant VE hypothetical renders the step-four conclusion unsupported by substantial evidence, contending that the VE's testimony established that the occupations[3] identified

---

[2] Another possible reading of the ALJ's decision is that the ALJ did not reject Dr. Hahn's limitation but found a sedentary RFC determination to be consistent with such a limitation. Plaintiff asserts the opposite, however, and Defendant agrees. Under either reading, the decision lacks the clarity of explanation required for meaningful judicial review.

[3] Plaintiff erroneously states that the ALJ found Plaintiff could return to seven previous jobs. The ALJ found that Plaintiff was capable of performing only three previous jobs. *Compare* Pl.'s Br. at 12, *with* R. 36-37.

7

by the ALJ at step four cannot be performed by someone subject to such a limitation. *See* Pl.'s Br. at 10-13; R. 74-77.

The Court is constrained to agree with Plaintiff that the ALJ's step-four conclusion lacks sufficient supporting evidence. At the hearing, the VE relied upon the DOT listings for Administrative Assistant, Receptionist, and Claims-Services Representative to opine that an individual with the written decision's RFC would be able to perform those three occupations. R. 74-77 (citing DOT (4th rev. ed. 1991) 169.167-010, 1991 WL 647424 (Administrative Assistant); *id.* 237.367-038, 1991 WL 672192 (Receptionist); *id.* 249.362-026, 1991 WL 672320 (Order Clerk or "Claims-Services Representative")). The VE was then asked by Plaintiff's counsel whether an individual with nearly all the same limitations as reflected in the ALJ's hypothetical, but with "severe neck problems that prohibited the ability to look up and down from, say, a computer screen," would be able to perform any of the occupations. R. 78. The VE answered:

> I don't think so. You're going to have to be able to look down more than up, but the computer screen is not normally going to be higher. It's going to be in front of you or even lower. Not so much always to look at a computer screen, but to look at a keyboard and the other paperwork that might be beyond. If they cannot look forward or down, I don't think they could maintain those jobs. They're going to be in a static position. Very hard to do that kind of work.

R. 78. The Commissioner does not dispute Plaintiff's assumption that looking up and down from a computer screen is inconsistent with a limitation to "minimal motion of the neck and spine."

This testimony leaves the Court unable to find that the ALJ's improper evaluation of Dr. Hahn's treating-physician opinion was harmless. Although the DOT does not

8

address head and neck motion in describing the requirements of the relevant occupations, the VE did so and affirmatively testified that such a limitation would render the cited occupations unavailable. *Compare* DOT 169.167-010, 1991 WL 647424, *and id.* 237.367-038, 1991 WL 672192, *and id.* 249.362-026, 1991 WL 672320, *with* R. 76-78. Thus, it cannot be said that the ALJ's RFC error did not "affect[] the outcome in this case" or render the step-four conclusion unsupported by substantial evidence.[4] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1173 (10th Cir. 2012).

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 18th day of September, 2018.

*[signature]*
CHARLES B. GOODWIN
United States District Judge

---

[4] Because reversal is warranted based upon the errors outlined above, the Court need not address Plaintiff's remaining arguments. *See Watkins*, 350 F.3d at 1299.